Beecher Johnson, Appellee, v. Jake Squires, Appellant.

Gen. No. 8,377.

Opinion filed.
February 3, 1930.

J. D. ALLEN, for appellant.

LEWMAN & CARTER, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

Appellee brought suit against appellant for injury to appellee's car, by reason of said car running into the wagon and vehicle of appellant being driven upon the highway in the night without any lights, and causing the destruction of appellee's car. Appellee's car was being driven by his stepson, who was on the road with two companions, and appellant's wagon was being driven by one Harris and was loaded with tools, the team attached to the wagon belonging to Harris, and he was accompanied by two men who were working for appellant. Appellant was a contractor and employed Harris with his team and wagon to do various pieces of work, paying him the sum of $6 a day. The witnesses in appellee's car testify that the accident occurred about 8:30 in the evening and that while they were driving on the highway at a speed of 30 miles an hour they came upon the wagon and a vehicle from the rear and did not see it until they were within 20 feet from the wagon, upon which the driver of the automobile steered his machine to the left in an effort to avoid the collision, but that the right front wheel of the automobile crashed into the wagon, tipping the automobile over and throwing it into the ditch.

The cause was commenced in a justice court and was tried *de novo* in the county court of Vermilion county. There was a verdict and judgment for appellee in the sum of $225 and appellant has brought the record to this court, by appeal, for review.

Appellant contends that Harris was an independent contractor; that the work that Harris was doing upon the day in question was particular work and required a wagon larger or different from Harris' wagon and that appellant had permitted Harris to use his wagon on this particular day, and that the accident occurred at about 6:30 in the evening. The accident occurred on the evening of March 22nd before the trial. Some question is raised as to the proofs of the amount or extent of the injury to appellee's car and the value of the car before and after the injury, but upon reading the testimony we are satisfied that the witness was qualified and competent to testify to such values. The principal contention on the part of appellant is that the driver of the wagon was not a servant of appellant, but was working for appellant as an independent contractor and not under appellant as a superior. Appellant testified: "I contract work, yes, sir; took contract to load a discarded boiler at Westville; employed Harris and several men on that job; don't recall date of beginning that job; had another contract at Yankee Branch. On my job I had a wagon and a truck. I paid Harris by the day for his team and wagon; his wagon was not suited to the work at Westville, had to use my wagon. I told him what to do. I am working boss nine hours of the day." Harris testified as shown by the abstract: "Reside at 327 E. Harrison St., Danville; business public work with team and wagon; own team and wagon. Hired to Jake Squires in March; worked when needed; he just calls me up; worked for Squires pretty much every day in March; was working for him the day of the accident. I had my team.

I had Squires' wagon. I exchanged wagons with him because we had blocks to carry and my wagon was not sufficient to carry them all. I used his wagon and he used mine and his team. Went to Westville to a little mine out from Westville; got through at the mine about five o'clock, took about twenty minutes to load tools on wagon. They were Squires' tools; he had not told me to bring them in town; was getting $6 for use of my team and wagon.''

Further than this, appellant produced a witness who testified: ''I asked him (appellant) if the fellows on the wagon were working for him and he said they were.'' This testimony was not contradicted. The men on the wagon, other than Harris, were working with Harris at the same work and under the testimony of appellant were servants of appellant and upon all the proofs the jury was not warranted in finding that Harris was the servant of appellant. Taking all of the testimony as to the service of Harris for appellant, sufficient facts are not shown upon which it may be determined definitely whether he acted as a servant or as a contractor. (*Besse v. Industrial Commission,* 336 Ill. 283.)

Some errors in rulings upon the admission of testimony were made, but none in the opinion of this court that prejudiced appellant's cause or that would warrant a reversal of the judgment. This case was very closely contested upon the question of due care and caution on the part of the driver of appellee's car at the time of the injury. Upon this trial the witness Quarrels (driver) refused to testify or make any estimate or express any opinion as to how far in front of his car he could see, as he approached appellant's wagon. He testified that the lights of his car were burning and that he could not see the wagon until he was within 20 feet from it; that driving the car at 30 miles an hour he could stop in 25 feet. The witness

denied that he testified in justice court. "I had lights in front, bright, and I could see 50 or 75 yards with the lights." The lawyer who tried the case in justice court, Casper Platt, was produced as a witness and testified that he could not remember the face or name of Quarrels, but that in the justice court he had made notes and that the driver of appellee's car had testified that "he had bright Ford lights and could see ahead of his car with the lights from 50 to 75 yards." The witness remembered the testimony and remembered the witness, but he could not remember his face and he had refreshed his memory before coming to court and upon the trial testified from memory. Thereupon the following colloquy occurred before the jury:

"Mr. Carter: I demand that the witness produce the notes, he is testifying to his recollection from the notes.

The Court: Well, I don't know anything about who made notes.

Mr. Platt: I made notes at the trial, when the case was tried.

The Court: Well, I think if the witness refreshed his recollection from notes, I think counsel has a right to see them.

Mr. Carter: You refuse to produce them?

Mr. Allen: I say I am standing on my rights. I don't have to produce the notes, they would not be good evidence if I did.

Mr. Carter: Be damaging to you. All right. I'm not waiving my demand however, by that remark.

Mr. Allen: I'll say this, we will submit no notes.

The Court: Call the next witness.

This was reversible error. It was in substance a ruling by the court that if the notes were not produced the testimony was incompetent. Counsel for appellee was not entitled to the notes and his conduct is not to be commended.

Appellee's second instruction given by the court was as follows:

"The court instructs the jury as a matter of law that one who employs others to work for him is responsible for the acts of the others while so working to the same extent as if he had done the acts himself."

This instruction ignores entirely one of the issues made in the case and was error. Some other criticism is made upon the giving and refusal of instructions and in which there were errors, but upon another trial these errors and the errors upon the rulings as to evidence doubtless will be corrected.

For the reasons stated the judgment of the county court of Vermilion county is reversed and the cause remanded.

*Reversed and remanded.*